## CLARKE & CO. v. WINDHAM.

1. A will conveying property to a married woman, by the terms, " I leave for her use and benefit, as he (the trustee) may think proper, and best, without being subject to her debts, and contracts, in any way whatsoever, or her husband, or any future husband, solely for her support, her lifetime," creates a separate estate in the property, in the wife—*Quere*, will not the prohibition against her charging the estate, by contract, during the coventure be enforced.

2. After the coventure has ceased, a woman may be proceeded against at law, for a debt which she owed previous to the marriage.

3. The interest of one in possession of personal property, may be sold under execution at law, though the legal title is outstanding in a trustee.

Writ of Error to the Circuit Court of Pickens.

TRIAL of right of property. The plaintiffs in error sued out execution on a judgment, against James, and Elizabeth Tanner, which was levied on certain slaves, claimed by the defendant in error as the trustee of Elizabeth Tanner.

Upon the trial, the claimant read the clause of a will, made by R. Windham, which reads thus : " I give and bequeath, unto my daughter Elizabeth Reed, the use of three eigthy acre tracts of land, (described particularly) said land to be under the superintendence of my son Levi B. Windham, who I appoint as guardian, to manage and control all the property, I leave for the use and benefit, as he may think proper, and best,

without being subject to her debts, and contracts, in any way whatsoever, or her husband, or any future husband, solely for her support, her life-time. And if the said Levi B. Windham may think it best to sell the land above mentioned, and and buy other land elsewhere for her use, he is authorized under this instrument to do so, and apply the money to ;the purchase of the same, and any other means I may leave for her support. Also, I place in his hands the other third of all my personal, and perishable property, not otherwise disposed of in said will, to be put on said land, and employed there as he may think best for her support solely, for her life-time, and after her death, to be equally divided between her lawful children."

It was proved that the slaves levied on were, at the time of levy, and had been for some time previous, on a tract of land rented by claimant, about four miles from Fairfield, where Elizabeth Tanner resides, James H. Tanner having left the country. That the said Elizabeth received her supplies from the plantation so rented—sent rope, bagging, and such like articles to it, and attended to the negroes when sick. That Mrs. Tanner, was the Mrs. Reed mentioned in the will, and that the slaves levied on were part of the property left by the will, and which had been distributed under the will, and that the claimant had qualified, and was acting as executor under the will.

The court charged the jury, that if the slaves levied on were part of the estate of the testatrix, and had been divided, and set off under the will, they were exempt from levy by execution at law, for any debts of Mrs. Tanner, and not subject to their payment.

This was excepted to, and is now assigned as error.

HUNTINGTON, for plaintiff in error.
BRODIE, contra.

ORMOND, J.—The clause of the will which has been re\`cited, is quite sufficient to establish the intention of the testatrix, to create a separate estate in Mrs. Reed, her daughter, who it appears was then a married woman, in the property

during her life. It is given to the claimant by language, which though inartificial, creates a trust *for her use, and benefit not subject to her debts, or those of her husband, or those of any future husband, solely for her support.* Although the technical words, for her *sole and separate use,* are wanting in this bequest, we think it impossible to doubt what was the intention; and any language clearly indicating the intent to exclude the marital rights of the husband, will be sufficient to create a separate estate in the wife.

In Newman v. James, at the last term, we had occasion to consider this question, and we then held, that the words, "without let, hindrance or molestation whatever," applied in the conveyance to the enjoyment of the property by the wife, created a separate estate, as they clearly indicated that the husband was not to have control, or dominion over the property. The language here employed, though very inartificial, indicates very clearly, that it is for the sole use, benefit and support of the wife, and that the husband shall not charge it, nor shall it be chargeable for his debts, which is wholly inconsistent with his exercising any right over it. In Kennerly v. Smith, at the last term, this question was so fully considered, that we shall abstain at this time from any further examination of it.

It is also equally certain, that it was intended to create an estate in the wife, inalienable by her, and which she should not by any act of hers, charge for the payment of her debts. Whether this incident of a separate estate in a married woman is a legal limitation in this country, we shall not at this time undertake to decide, as that question has not been argued. Such a limitation on the estate of a married woman, has been held legal in England, in the recent case of Tullit v. Armstrong, 1 Beavan, 3. It may perhaps be well doubted, whether such a limitation upon the estate, would continue after the death of the husband, or separation of the husband and wife.

It does not appear from the record, whether Mrs. Tanner, is a married woman, but it is admitted here that such is the fact. It is also stated on the record, that the husband has

left the country, but whether under such circumstances as would justify the inference, that she was abandoned by him, and could therefore be treated as a *feme sole* does not appear. The judgment it appears was against the husband, and wife, and we cannot comprehend how this could be, unless it was for a debt due by her previous to the marriage ; and if the facts of the abandonment were such as to justify her being treated as a *feme sole*, it would seem, that the debt which had been suspended against her during the coverture, was revived against her by the abandonment of the husband, precisely as it would have been by his death. See the authorities collected in Clancy on Rights, 13, and Woodman v. Chapman, 1 Camp, 189. She appears to have been considered, and treated as a *feme sole*, in the court below, and it is proper we should so consider her here. So considered, although during the coverture she could not be sued at law, in respect to her separate estate, yet after the coverture ceases, no such disability exists, nor is there any necessity for a resort to chancery to make her liable on her contracts. If she was in possession of this property, although the legal title is outstanding in another, her possessory interest may be sold. This point has been decisively settled in this court, by the case of Nelson, Carleton & Co. v. Banks, 7 Ala. 32, and in many other recent cases, especially in Kennerly v. Smith, *supra*, where all the cases are cited.

From this consideration, it appears, that treating the defendant as a *feme sole*, the court erred in its charge to the jury. Whether she had the possession of this property, or not, was a question for the determination of the jury. If she had, and can be treated as a *feme sole*, then she is liable at law, though the legal title is in another, and she has but a life estate in the slaves, and other property.

Judgment reversed and cause remanded.